# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BMO HARRIS BANK, N.A.,

    Plaintiff,

    v.                                  No. 1:19-cv-00180 KWR/KK

DON SALAZAR,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Motion for Summary Judgment filed on October 29, 2019 **(Doc. 39)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiff's Motion is well-taken and, therefore, is **GRANTED IN PART**.

## BACKGROUND

This is a breach of contract case alleging that Defendant failed to pay amounts due on several pieces of equipment, including a 2014 Peterbilt Series 389 truck. Defendant, proceeding *pro se*, generally does not dispute that he failed to pay but argues this failure should be excused because his insurance delayed paying for damage to his 2014 Peterbilt truck, and he could not work.

Plaintiff sold the equipment and applied the sale proceeds to the amount owed by Defendant. This resulted in a deficiency amount of $48,370.62. Plaintiff argues that the equipment should have sold for a higher amount.

The complaint asserts a Breach of Contract claim (Count I) and Replevin claim (Count II).

## UNDISPUTED FACTS

The Court finds that the following facts are undisputed and well-supported in the record. Defendant admitted to many of Plaintiff's facts. Although Defendant purported to dispute some of Plaintiff's facts, those disputes were not genuine and generally not relevant to Plaintiff's asserted facts. Moreover, Defendant failed to cite to the record to support his alleged disputes of fact, therefore the Court deems Plaintiff's facts admitted. Fed. R. Civ. P. 56(c); D.N.M.LR-Civ. 56.1(b).

Defendant financed three separate pieces of equipment. The agreements and relevant facts are noted below.

A.  **Agreement 1 as to 2014 Peterbilt Truck.**

Plaintiff is an assignee of General Electric Capital Corporation, Transportation Truck and Trailer Solutions, LLC and GE Capital US Holdings, Inc. On or about April 28, 2014, Defendant entered into a Loan and Security Agreement ("Agreement 1") with Plaintiff in the total amount of $210,008.30 for the purchase of a 2014 Peterbilt 389 Series Truck.

Defendant agreed to make monthly payments for the purchase of the Peterbilt truck ("Equipment 1") beginning on or about July 1, 2014 for a term of 74 months. Defendant was obligated to pay a minimum monthly payment of $2,837.95. Pursuant to Paragraph 5.1, entitled "Events of Default," Defendant will be in default under the loan if he fails to pay when due any amount owed by him to Plaintiff under this Agreement.

Pursuant to Paragraph 5.2, entitled "Remedies," upon Defendant's default, Plaintiff may "declare the indebtedness hereunder to be immediately due and payable." Plaintiff may then "exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the

Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability." **Paragraph 5.2**.

On or about January 8, 2018, Defendant entered into a Modification Agreement (hereinafter "Modification 1") with Plaintiff for Agreement 1. On or about April 1, 2018, Defendant defaulted on Modification 1 by failing to make the minimum monthly payment.

**B.**     **Agreement 2 as to 2015 Ranco Dump Trailer.**

On or about June 4, 2015, Defendant entered into a Loan and Security Agreement ("Agreement 2") with Plaintiff in the total amount of $59,096.40 for the purchase of a 2015 Ranco Dump Trailer. Pursuant to Agreement 2, Defendant agreed to make monthly payments for the purchase of the above Equipment ("Equipment 2") beginning on or about August 1, 2015 for a term of 60 months.

Defendant agreed to make monthly payments for the purchase of the above Equipment ("Equipment 2") beginning on or about August 1, 2015 for a term of 60 months. Defendant was obligated to pay a minimum monthly payment of $984.94.

Pursuant to Paragraph 5.1 entitled "Events of Default," Defendant will be in default under the loan if he fails to pay when due any amount owed by him to Plaintiff under this Agreement. Pursuant to Paragraph 5.2, entitled "Remedies," upon default Plaintiff may "declare the indebtedness hereunder to be immediately due and payable." Upon default Plaintiff may "exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment

that is in or upon the Equipment at the time of repossession may be taken and held without liability."

On or about January 8, 2018, Defendant entered into a Modification Agreement (hereinafter "Modification 2") with Plaintiff for Agreement 2. On or about April 20, 2018, Defendant defaulted on Modification 2 by failing to make the minimum monthly payment.

**C.** **Agreement 3 as to 2017 Travis Dump Trailer.**

On or about June 8, 2016, Defendant entered into a Loan and Security Agreement ("Agreement 3") with Plaintiff in the total amount of $72,176.40 for the purchase of a 2017 Travis Dump Trailer. Pursuant to Agreement 3, Defendant agreed to make monthly payments for the purchase of the above Equipment ("Equipment 3") beginning on or about August 1, 2016 for a term of 60 months. Defendant was obligated to pay a minimum monthly payment of $1,202.94

Pursuant to Paragraph 5.1, entitled "Events of Default," Defendant will be in default under the loan if he fails to pay when due any amount owed by him to Plaintiff under this Agreement. Pursuant to Paragraph 5.2, entitled "Remedies," upon default, Plaintiff may "declare the indebtedness hereunder to be immediately due and payable." Plaintiff may then "exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability."

On or about January 8, 2018, Defendant entered into a Modification Agreement (hereinafter "Modification 3") with Plaintiff for Agreement 3. On or about April 20, 2018, Defendant defaulted on Modification 3 by failing to make the minimum monthly payment.

D. **Repossession and Sale of Equipment**.

The equipment was surrendered to Plaintiff and sold in a commercially reasonable manner. Net proceeds of the sales were applied to the total deficiency owed by Defendant.

Plaintiff retained Ritchie Bros., a global asset management and disposition company, specializing in the buying and selling of used heavy equipment and trucks to sell the repossessed Equipment 1 and 2 in this case. Ritchie Bros. collected detailed equipment information, performed functional tests of key components of some of the equipment and provided Plaintiff with condition reports prior to sale. By notices entitled, "Notification of Disposition of Collateral", Defendant was notified that Plaintiff intended to sell Equipment 1 to a private buyer and Equipment 2 to the highest qualified bidder in a public auction on a specified date. Equipment 2 was advertised by Ritchie Bros. in a manner which is customary for equipment of this type. Equipment 1 was sold to a private buyer.

Equipment 3 was surrendered to Plaintiff and sold in a public foreclosure sale in a commercially reasonable manner and the net proceeds of the sales were applied toward the deficiency owed by Defendant. **Doc. 51,** ¶ 4. Plaintiff retained Utility Trailer Sales of Colorado, LLC. Utility Trailer is an American truck-semi trailer and refrigerated van manufacturing company, which has an extensive independent dealer network which specializes in buying and selling various equipment, including dump trailers. **Doc. 51,** ¶ 5. Utility Trailer collected detailed equipment information and provided Plaintiff with a condition report.

Defendant was notified that Plaintiff intended to sell Equipment 3 to the highest qualified bidder in public auction on October 29, 2019. Equipment 3 was advertised by the Albuquerque Publishing Company in a manner which is customary for equipment of this type.

Following repossession and sale of the equipment, Plaintiff sustained significant damages in the amount of $48,370.62 due to Defendant's breach and default of the agreements. **Doc. 51, ¶ 11**.

## LEGAL STANDARD

A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co*., 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

## DISCUSSION

**I.  Defendant breached contracts.**

Plaintiff alleges that Defendant breached Agreements 1 through 3. The agreements provide that the contract is governed by Texas law, **Doc. 39-1, ¶ 7.6,** although Plaintiff cites to both Texas and New Mexico law. "Under Texas law, the essential elements of breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the

breach." *Mid-America Mortg., Inc. v. United Sec. Fin. Corp.*, No. 3:18-CV-2806-G, 2019 U.S. Dist. LEXIS 116686, at *9 (N.D. Tex. July 12, 2019).

This is similar under New Mexico law. In order to recover damages for breach of contract in New Mexico, Plaintiff must show: "(1) existence of a contract; (2) breach of the contract; (3) causation; and (4) damages." *Anderson Living Trust v. ConocoPhillips Co.*, L.L.C., 952 F. Supp. 2d 979, 1030 (D.N.M. 2013). Furthermore a "contract is a legally enforceable promise that must consist of an offer, an acceptance, consideration, and mutual assent. A person may breach a contract by failing to perform a contractual obligation when the performance is required, unless that performance is otherwise excused. Incomplete performance is a breach of contract." *Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1036 (D.N.M. 2016).

Defendant admits there were valid contracts and that he failed to pay as required under the contracts. The Court finds the undisputed facts and record support this as well. Therefore, the Court concludes that Defendant failed to pay as required and breached the contracts.

Defendant appears to argue that his failure to pay should be excused, because his truck was in the repair shop and he could not work to earn an income. However, Defendant has not pointed to anything in the contract or case law that excuses a failure to pay for those reasons, and the Court can find none.

**II.    Amount of Damages**.

The equipment was repossessed and sold at an auction. Generally, a debtor is liable for a deficiency following a sale. N.M. Stat. Ann. § 55-9-608. The parties appear to agree that the amount of deficiency, after crediting the sale, is $48,370.62. *See* **Doc. 58 at 2 ¶ 39; Doc. 59 at 9.**

Defendant argues, however, that this amount should be reduced because the equipment was undersold by $41,345.77. In support of that argument, Defendant attached three apparently similar

equipment advertisements listing a "for sale" amount. These advertisements, however, did not show what the equipment actually sold for.

Even if Defendant had shown that the equipment was undersold, that argument is not relevant under these circumstances. "The fact that a greater amount could have been obtained by a collection, enforcement, disposition or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition or acceptance was made in a commercially reasonable manner." N.M. Stat. Ann. § 55-9-627(a). It is undisputed that Plaintiff sold the items in a commercially reasonable manner, and Defendant has not challenged that the sale was made (1) in the usual manner in a recognized market or (2) otherwise in conformity with reasonable commercial practices among dealers in that type of property.[1] N.M. Stat. Ann. § 55-9-627(b); N.M. Stat. Ann. § 55-9-626(a)(1) ("A secured party need not prove compliance with the provisions of this part relating to collection, enforcement, disposition or acceptance unless the debtor or a secondary obligor places the secured party's compliance in issue."). Therefore, the agreed amount of deficiency, $48,370.62, stands.

The Court notes that the parties agreed that the correct amount of the judgment is $48,370.62, and Plaintiff did not specifically request or making a showing for pre-judgment interest. **Doc. 59.** Therefore, the Court declines to award any additional pre-judgment interest on top of this amount, although Plaintiff is entitled to post-judgment interest. 28 U.S.C. § 1961.

## CONCLUSION

---

[1] Defendant has not disputed that the sale was in a commercially reasonable manner. *Compare* **Doc. 39-2**, ¶¶ 32-36 *with* **Doc. 58**, ¶¶ 32-36. Even if Defendant did dispute Plaintiff's facts, the Court would deem the Plaintiff's facts admitted because Defendant failed to cite to any record in his asserted factual disputes. Fed. R. Civ. P. 56(c); D.N.M. LR-Civ 56.1(b).

For the reasons stated above, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART.** As to Count I, Plaintiff is awarded a deficiency judgment in the amount of $48,370.62 along with post-judgment interest. This amount apparently does not include attorney fees. Plaintiff did not expressly request attorney fees in the motion, but it may file a motion for fees if appropriate under the Federal Rules of Civil Procedure and local rules. Count II (replevin) is denied as moot.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE